### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

IN RE:                                      )
                                            )
MARK ALLEN ROCK and                         )        No. 04-83722
TINA ROSE ROCK,                             )
                            Debtors.        )

### O P I N I O N

Is a Chapter 7 debtor's right to receive severance pay exempt under Illinois law? That question comes before the Court on the Objection filed by the Chapter 7 Trustee, Richard E. Barber (TRUSTEE), to a claim of exemption in "expected severance pay" asserted by one of the Debtors, Mark A. Rock (DEBTOR).

### BACKGROUND

The facts are not in dispute. For many years, the Maytag Corporation (MAYTAG) operated an appliance production plant in Galesburg, Illinois, that was the largest employer in that town. The DEBTOR had worked for MAYTAG since 1989 and was a member of the International Association of Machinists and Aerospace Workers Union. Due to competitiveness issues, the plant closed in late 2004.

In anticipation of the plant closing, the Machinists Union negotiated an Agreement with MAYTAG for its employees to receive severance pay. The Agreement, dated March 3, 2003, provides, in material part, as follows:

> 4. Any employee on the active payroll or leave of absence (medical, military, workers' compensation, or personal), or on layoff with recall rights, whose employment is eventually terminated by reason of the closure of Maytag – Galesburg Refrigeration Products and who signs and does not revoke the Company's Separation Agreement & Release, shall receive a Separation Package as follows:

      a) Forty (40) hours of straight time severance pay for each one (1) year of seniority service (based on the employee's date of seniority and his/her layoff date, rounded to the nearest year) up to a maximum of twenty-six (26) weeks' pay.

      The severance rate of pay shall be based upon the employee's year-to-date average rate of pay in the year of his/her termination.

      b) Further, the Company will extend to a terminated employee health care coverage (coverage not to exceed what was in place for the employee on the effective date his/her termination) for the remainder of the month in which termination occurs, plus additional coverage for the length of the separation pay in a) above with a minimum of four (4) consecutive months. The Company will pay all costs associated with the extension of this coverage.

      Employees terminated for any reason other than the facility closure (such as voluntary termination or quit, discipline related-discharge) shall not be eligible for severance pay and extended health care coverage.

      Eligible employees shall have 45 calendar days from receipt of the Separation Agreement & Release to determine whether or not to accept the Separation Package. Once the employee signs the Separation Agreement and Release and returns it to the Company, he/she will have seven (7) days within which to revoke his/her decision.

By letter dated July 14, 2004, the DEBTOR was given notice by MAYTAG that his job would be eliminated as of September 15, 2004, and that he was expected to work through the separation date. He was also given the option of signing a Separation Agreement that would effectively terminate his employment with MAYTAG and entitle him to receive the severance pay earlier negotiated by the union.

On August 18, 2004, while still working at MAYTAG, the DEBTOR and his wife filed their joint petition for Chapter 7 relief. On September 15, 2004, on his final day on the job, the DEBTOR signed the Separation Agreement. Thereafter, the DEBTOR received his

severance pay check dated October 8, 2004, in the amount of $6,855.49.[1]

On his Schedule of Property Claimed as Exempt, the DEBTOR claimed the severance pay as exempt under three alternative statutes: 735 ILCS 5/12-1001(b), 5/12-1001(g)(1) and 5/12-1001(g)(3).[2] The TRUSTEE filed a timely objection to the claim of exemption arguing that the only proper basis for an exemption is the unused balance of $300 of the DEBTOR'S wildcard exemption under 735 ILCS 5/12-1001(b). In response, the DEBTOR contended that severance pay is in the nature of an unemployment benefit and, as such, is exempt under either 735 ILCS 5/12-1001(g)(1) or (3).

The DEBTOR also filed a Motion for Finding that Severance Pay is Not Property of the Estate and Claim of Additional Exemption in which he takes the position that his contractual right to severance pay is not property of the estate because it either arises under an ERISA qualified plan or is a spendthrift trust. Alternatively, the DEBTOR argues that because he was not entitled to a present distribution at the time of his bankruptcy filing, neither is the TRUSTEE entitled to administer what is, in effect, a postpetition asset. Both parties filed briefs and the matter was taken under advisement.

## ANALYSIS

First, the Court holds that the DEBTOR'S contractual right to the severance pay is

---

[1] The gross amount of his severance pay was $10,653.44. Withheld payroll taxes totaled $3,797.95.

[2] The DEBTOR also asserted 15 U.S.C. § 1673 as a basis for the exemption, but abandoned this position in his Response filed November 5, 2004.

3

not excluded from the bankruptcy estate under Section 541(c)(2) of the Bankruptcy Code. That provision, which limits the broad definition of the bankruptcy estate as being comprised of "all legal and equitable interests of the debtor in the property at the commencement of the case," excludes a debtor's beneficial interest in a trust that is subject to a restriction on transfer enforceable under "applicable nonbankruptcy law." Pension plan trusts, required by the Employee Retirement Income Security Act of 1974 ( ERISA), as amended, to contain nonalienation provisions, are not property of the bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The issue here is whether the Agreement, which constitutes a type of employee welfare benefit plan also governed by ERISA, is a "trust" to which Section 541(c)(2) applies. Based on the record before it, the Court finds that it is not.

In order to determine whether property is excluded from the estate under this provision, a three-part inquiry applies: "First, does the debtor have a beneficial interest in a trust? Second, is there a restriction on the transfer of that interest? Third, is the restriction enforceable under non-bankruptcy law?" *In re Wendt*, 320 B.R. 904 (Bankr.D. Minn. 2005). In the present case, the DEBTOR'S right to receive a severance payment under the Agreement was not a "trust." In addition, the Agreement submitted by the DEBTOR does not contain an antialienation clause. The DEBTOR'S assumption that because the Agreement is governed by ERISA his right to severance pay never becomes property of the bankruptcy estate was debunked by the court in *Wendt,* 320 B.R. at 908-09. Rejecting a similar contention, the court stated:

4

> Trustees' and debtors' counsel often cite *Patterson v. Shumate* as if it melded the operation of ERISA and the Bankruptcy Code, giving immediate and inevitable effect during the formation of the bankruptcy estate to a vaguely-conceived pre-petition process of "ERISA qualification." Such a reading is the result of short-circuited thinking and an over-reliance on jargon and trope. In point of fact, an actual, direct consideration of ERISA is relevant only to the third part of the . . . test, whether non-bankruptcy law provides a means for the enforcement of a restriction on transfer. In a concrete case, the restriction on transfer is created and evidenced in the terms of an independently-documented trust. Its existence is proved up by producing the relevant text from the trust's organic documents. It is incidental to the analysis under the terms of § 541(c)(2) that ERISA's terms require a trust structure, 29 U.S.C. § 1103(a), plus provision for restraints on alienation and assignment in the documents governing beneficiaries' rights, 29 U.S.C. § 1056(d)(1). ERISA requires these terms in a plan as a prerequisite for the affording of various benefits and protections under it, specifically the imposition of a fiduciary relationship between plan administrators and employee-beneficiaries. However, their concrete existence is established by the "documents and instruments governing the plan." They are not deemed to arise or to apply by direct operation of the ERISA statute.

The Agreement contains no language indicating that the severance pay obligation was intended to be in the nature of a trust and it does not contain an antialienation provision. Accordingly, this Court holds that the severance pay is not excluded from the bankruptcy estate under Section 541(c)(2). For the same reasons, the Agreement is not a spendthrift trust.

Next, the Court concludes that the severance pay is an asset of the bankruptcy estate. As recognized by the 7th Circuit in *Matter of Yonikus,* 996 F.2d 866 (7th Cir. 1993), a debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate. In *Yonikus*, a contingent right to future compensation under the Workers' Compensation Act was determined to be property of the estate. The 9th Circuit

5

has held that a debtor's interest in severance pay that arose when he was terminated nine months after bankruptcy was property of the estate because it was sufficiently rooted in his prebankruptcy past. *In re Ryerson,* 739 F.2d 1423 (9th Cir. 1984). In line with this principle, severance pay provided in a prepetition contract and received as the result of a postpetition termination is property of the estate. *In re LaSpina,* 304 B.R. 814 (Bankr.S.D.Ohio 2004); *In re Dennison,* 84 B.R. 846 (Bankr.S.D.Fla 1988). This Court holds that the severance pay at issue is property of the DEBTOR'S bankruptcy estate.

Turning now to the exemption issue, in the Court's view, the issue is properly considered under 735 ILCS 5/12-1001(g)(3), which provides an exemption for a debtor's right to receive "a disability, illness, or unemployment benefit."[3] It is clear that the Legislature intended to draw a distinction between "unemployment compensation" referred to in paragraph (g)(1) and an "unemployment benefit." This Court construes the term "unemployment compensation" to refer to a payment through a government mandated program such as that administered pursuant to the Illinois Unemployment Insurance Act, 820 ILCS 405/100 *et seq.* Comparatively, the term "unemployment benefit" is a more general term that refers to a payment on account of or attributable to the status of being unemployed or having lost one's job. With no limitation on the source of the benefit contained in the statute, it is proper to construe the term broadly to include benefits

---

[3] Noting that the parallel Bankruptcy Code provision found at 11 U.S.C. § 522(d)(10) has been construed as intended to exempt benefits that are "akin to future earnings" of the debtor, one court has held that paragraph (g) of the Illinois exemption statute also exempts payments that are akin to future earnings. *See, In re Haynes,* 146 B.R. 779, 780-81 (Bankr.S.D.Ill. 1992).

derived from private contractual arrangements such as an unemployment benefit provided in an employment agreement.

The difficulty here is that the DEBTOR'S right to severance pay is *not* conditioned upon his being unemployed for any length of time or at all. He would have been entitled to receive the severance pay even if he had a new job waiting for him when he walked out the door at MAYTAG for the last time. In this Court's view, however, whether severance pay is an "unemployment benefit" should not be determined idiosyncratically, employee by employee, based on each person's job prospects. Instead, the severance pay at issue here, available to similarly situated blue collar employees, should be accorded a unitary construction common to all such employees. In this regard, it is necessary to look to the intent of the parties to the Agreement.

The Separation Package is part of a special Agreement between MAYTAG and the Union that was struck in express contemplation of the closing of the Galesburg facility and provides for a severance pay benefit that was not included as part of the general collective bargaining agreement between them.[4] The Agreement also provides for additional services to be provided to separated employees including the following:

    a)    Job search assistance for re-entry into the job market.
    b)    Computers and telephones in Galesburg for employee use.
    c)    Resume writing and interview skill assistance.

---

[4] The collective bargaining agreement is not part of the record. The Agreement provides that it supercedes the current labor agreement only on the subject of the cessation of operations of the Galesburg plant.

7

Thus, it is clear that the parties to the Agreement intended that the Separation Package would provide financial assistance during a time of anticipated unemployment.

In addition, courts recognize that the general purpose behind severance pay is to offset the loss of income experienced by one who is involuntarily separated and must find a new job. *See, e.g., Holland v. Burlington Industries, Inc.,* 772 F.2d 1140 (4th Cir. 1985) (unemployment compensation is major purpose of severance pay provisions); *Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d 1209, 1211 (7th Cir. 1983) (quoting with approval district court's observation that "severance pay is generally intended to tide an employee over while seeking a new job and should be considered an unemployment benefit"); *Awbrey v. Pennzoil Co.,* 1990 WL 359539 (D.N.M. 1990), *aff'd,* 961 F.2d 928 (10th Cir. 1992) (noting that "case law demonstrates that the policy and purpose behind severance pay plans is to provide a kind of unemployment benefit and not simply a bonus upon termination"). It is also recognized that severance payments that increase based upon seniority may nevertheless be an unemployment benefit designed to compensate for the increased reliance by and possibly decreased employment prospects for older employees. *Ausloos v. Chromalloy American Corp.,* 626 F.Supp. 324 (E.D.Wisc. 1986).

Based upon the unique circumstance of the closing of the MAYTAG Galesburg plant and the fact that a special Agreement was negotiated to provide assistance to the employees who lost their jobs, the Court concludes that the severance pay at issue is in the nature of an unemployment benefit within the scope of Section 5/12-1001(g)(3) and, as such, is fully exempt.[5]  The TRUSTEE'S objection will be denied. In light of this result, it

---

[5] This holding should *not* be construed as a general determination that severance pay will always constitute an unemployment benefit. The issue is one to be decided on a case-by-case basis on the facts of each case.

8

is not necessary to address the DEBTOR'S other arguments.

      This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

Dated:   April 25, 2005
                                    Thomas L. Perkins
                                    U.S. Bankruptcy Judge

Copies to:
Scott Shipplett, Attorney for Debtors, P.O. Box 105, Monmouth, Illinois 61461
Richard E. Barber, Chapter 7 Trustee, 250 E. Main Street, Galesburg, Illinois 61401
U.S. Trustee, 401 Main Street, Suite 1100, Peoria, Illinois 61602